IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02231-PAB-KMT

BAKER HUGHES OILFIELD OPERATIONS, INC.,

    Plaintiff,

v.

MARK BEARD,

    Defendant.

## ORDER

This matter is before the Court on the Unopposed Verified Motion for Entry of Preliminary Injunction [Docket No. 9] filed on January 19, 2016 by plaintiff Baker Hughes Oilfield Operations, Inc. ("Baker Hughes").

Baker Hughes filed this lawsuit on October 8, 2015, alleging that defendant Mark Beard violated an employee agreement which prohibits the disclosure and unauthorized use of confidential, proprietary, and trade secret information.  Docket Nos. 1, 9.  In its January 19, 2016 motion, Baker Hughes moves for a preliminary injunction ordering Mr. Beard and all those acting in concert with him not to disclose the aforementioned information, to return any and all confidential information and trade secrets, as well as any other Baker Hughes property in Mr. Beard's possession, and to preserve certain information related to Baker Hughes' complaint.  Docket No. 9 at 11.  Mr. Beard does not oppose plaintiff's proposed preliminary injunction, but states that he does not possess, in any form, plaintiff's confidential information or trade secrets.  Docket No. 18

at 1-2.

On January 21, 2016, the Court issued an order explaining that a hearing may be necessary because plaintiff's motion for a preliminary injunction did not satisfy the requirements of Fed. R. Civ. P. 65, but that plaintiff may be able to address these shortcomings by supplementing its motion.  Docket No. 12 at 2.  On February 1, 2016, plaintiff filed Baker Hughes' Supplemental Brief in Support of Unopposed Verified Motion for Entry of Preliminary Injunction.  Docket No. 15.

To obtain a preliminary injunction, a plaintiff must demonstrate four factors by a preponderance of the evidence: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest."  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

The Court will focus on plaintiff's breach of contract claim to determine whether a preliminary injunction is warranted.

Regarding the first preliminary injunction factor, a likelihood of success on the merits, plaintiff alleges that Mr. Beard breached his employment contract.  To succeed on its breach of contract claim, plaintiff must show (1) the existence of a binding agreement, (2) that Baker Hughes performed its contractual obligations, (3) that Mr. Beard failed to perform his obligations, and (4) damages to Baker Hughes therefrom.  *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238,

1243 (D. Colo. 2013) (citing *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  Mr. Beard admits in his Answer that he signed the Employee Agreement.  Docket No. 7 at 3, ¶ 15.  The Employee Agreement states that the "Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information. . . ."  Docket No. 9-1 at 1-2.  Plaintiff attaches a declaration from Shawn Shipman, an Area Manager for Water Management employed by Baker Hughes.  Docket No. 15-1 at 1, ¶ 2.  Mr. Shipman states that Mr. Beard reported to him before Mr. Beard resigned.  *Id*. at 2, ¶ 7.  Mr. Shipman asserts that Baker Hughes conducted an investigation into Mr. Beard's computer use and that the investigation revealed that "on June 17, 2015–the day he resigned his Baker Hughes employment, Beard forwarded over 50 e-mails" to his personal e-mail.  *Id*. at 5, ¶ 22.  Based on his review of the e-mails, Mr. Shipman states that the e-mails and files therein contain substantial Baker Hughes confidential and proprietary information, such as pricing information for specific customers and product lines, historical revenue reports, business plans, customer invoices, proposals, and work orders.  *Id*. at 6, ¶ 23.  Mr. Beard admits sending e-mails to his personal account that contained pricing sheets, revenue reports, customer invoices, and proposals.  Docket No. 7 at 4, ¶¶ 28-29.  The Court finds that plaintiff has shown by a preponderance of the evidence a likelihood of success on its breach of contract claim.  *See Ross Dress for Less, Inc. v. Walton Foothills Holdings VI, L.L.C.*, No. 14-cv-02517-PAB-KMT, 2014 WL 4782815, at *2 (D. Colo. Sept. 23, 2014) (finding plaintiff had established a likelihood of success on the merits on a breach of

contract claim where plaintiff showed the defendant engaged in conduct prohibited by a lease agreement).

Regarding the second preliminary injunction factor, a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief, plaintiff avers that Mr. Beard left Baker Hughes to work for Bosque, a competitor, and that plaintiff will be damaged by the transfer of its confidential and proprietary information from Mr. Beard to a competitor. Docket No. 15 at 11. Plaintiff also argues that the "loss of dominion over its confidential, proprietary, and trade secret information is, itself, irreparable harm." *Id*. at 12; *see FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2nd Cir. 1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages. A trade secret once lost is, of course, lost forever.") (internal citations omitted). Further, in the Tenth Circuit, if "the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004) (quoting *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001). Plaintiff's trade secret misappropriation claims arises under the Colorado Uniform Trade Secrets Act, which provides for preliminary injunctive relief pursuant to Colo. Rev. Stat. § 7-74-103. The Court finds that plaintiff has shown by a preponderance of the evidence a likelihood that it will suffer irreparable harm.

Regarding the third preliminary injunction factor, that the balance of equities tips in the movant's favor, plaintiff asserts that "[a]n injunction like the one sought here that requires a party to comply with his contractual and statutory obligations places no

burden on the party that did not already exist, so it does not impose any hardship on the party that is entitled to consideration in analyzing the balance of equities." Docket No. 15 at 15; *see Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 873 (D. Colo. 2014); *see also TM Computer Consulting, Inc. v. Apothacare, LLC*, 2008 WL 4238913, at *10 (D. Or. Sept. 11, 2008) ("A grant of a preliminary injunction only will prevent defendants from doing what they are not authorized to do."). Mr. Beard does not oppose the requested preliminary injunction. Docket No. 18 at 1-2. The Court finds that the balance of equities weighs in favor of plaintiff.

Regarding the fourth preliminary injunction factor, that the injunction is in the public interest, plaintiff identifies two public interests that will be served if this Court grants its preliminary injunction: (1) the "strong public interest in enforcing contracts to promote stability and certainty in business relationships" and (2) the "strong public interest in furthering the legislature's purpose by enforcing statutes." Docket No. 15 at 15-16; *see Port-a-Pour*, 49 F. Supp. 3d at 873-74 ("[E]ntry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by promoting stability and certainty in business relationships . . . and by protecting confidential, proprietary and trade secret information of businesses.") (quoting *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton*, 2012 WL 260902, at *9 (M.D. Fla. Jan. 3, 2012); *Hindorff v. GSCRP, Inc.*, No. 13-cv-00955-PAB-KLM, 2013 WL 2903451, at *8 (D. Colo. June 14, 2013) (finding the public interest to be best served by the furtherance of the legislature's purpose for a statute). Accordingly, the Court finds that plaintiff has shown by a preponderance of the evidence that an injunction is in the public interest.

Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Both parties consider $1,000 as sufficient. Docket No. 9 at 12; Docket No. 18 at 1, ¶ 1. The Court finds no reason to disagree.

For the foregoing reasons, it is

**ORDERED** that Baker Hughes' Unopposed Verified Motion for Entry of Preliminary Injunction [Docket No. 9] is **GRANTED**. It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 65(a), defendant Mark Beard and all those acting in concert with him who receive actual notice of this Order are enjoined from possessing, using, or disclosing Baker Hughes Oilfield Operations, Inc.'s confidential information or trade secrets. It is further

**ORDERED** that defendant Mark Beard is enjoined from engaging in any business activity competitive with Baker Hughes Oilfield Operations, Inc., either for himself or any other person or entity, including without limitation, soliciting or diverting away Baker Hughes Oilfield Operations, Inc.'s customers or business opportunities, that requires the possession, use or disclosure of Baker Hughes Oilfield Operations, Inc.'s trade secrets. It is further

**ORDERED** that defendant Mark Beard shall immediately return any and all confidential information, trade secrets, and property belonging to Baker Hughes Oilfield Operations, Inc. that are in his possession, custody, or control. It is further

**ORDERED** that defendant Mark Beard shall preserve and hold all records,

documents, electronically stored information, and other forms of information that relate to the allegations in Baker Hughes Oilfield Operations, Inc.'s complaint, including information related to his hiring by Bosque Systems, LLC, the terms and conditions of his employment with Bosque Systems, LLC, his communication or contact with any Baker Hughes Oilfield Operations, Inc. customer on behalf of Bosque Systems, LLC, and his possession, use, or disclosure of any of Baker Hughes Oilfield Operations, Inc.'s confidential information or trade secrets.  It is further

**ORDERED** that, pursuant to Fed. R. Civ. P 65(c), this order will take effect upon plaintiff Baker Hughes posting a bond of $1,000.00 into the court registry as security.  It is further

**ORDERED** that this preliminary injunction shall remain in effect until the conclusion of a trial on the merits of this case or until further order of the Court.  It is further

**ORDERED** that the February 10, 2016 hearing on Baker Hughes' Unopposed Verified Motion for Entry of Preliminary Injunction [Docket No. 9] is **VACATED**.

DATED February 8, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge